21-24-86 Mr. Vladek, whenever you're ready. Thank you very much, Judge Park. Your Honors, may it please the Court, Stephen Vladek for the appellant and the move-in here, Stephen Donziger. Your Honors, Mr. Donziger is asking this Court only to continue the same bail conditions, including home confinement and electronic monitoring, to which he's been subject since the beginning of this case in August 2019. Those conditions were sufficient to secure Mr. Donziger's appearance not only when he potentially faced felony charges, but at his sentencing, even after Judge Preska had made it clear in her findings of fact and conclusions of law that he faced imprisonment. Indeed, when the District Court refused to continue those conditions at sentencing, the only changed circumstances identified were the facts of Mr. Donziger's conviction and impending imprisonment. The District Court offered no plausible explanation for why those developments altered the sufficiency of the existing conditions, the same ones that had secured Mr. Donziger's appearance to that point. Well, he was sentenced. He was, Judge Park, but he had already been convicted, and in the findings of fact and conclusions of law, Judge Preska said it's time to pay the piper. That's at page 240 of the findings of fact and conclusions of law. So if the circumstances had changed simply by dint of the conviction and the impending sentence, that should have been true at the time of conviction. And I think the critical point— Well, he got the maximum sentence, right? He did, although, Judge Park, I mean, I think if you look at the transcript, not just with regard to the findings of fact and conclusions of law, but all the way throughout, I mean, Judge Preska referred to jail time as jail time, that there is a—you know, that imprisonment is basically inevitable in this context. And I think the key to us, Your Honors, is that in that context, in the October 1st ruling, there was no discussion of the significance of the questions Mr. Donziger plans to raise on appeal, which are clearly substantial. There was no discussion of why the conditions to that point with which he had complied, which had succeeded in producing his appearance, were insufficient. And so that's why we think, in context, the existing conditions should have been continued. Did you— Have you moved for an expedited appeal? I'm sorry, Your Honor. Have you moved for an expedited appeal? We were awaiting the outcome of this current motion. I think our plan is to do so. But, of course, even an expedited appeal, Judge Newman, likely would not be resolved within the six months during which Mr. Donziger would serve his sentence. Well, maybe not by the end, but the sooner the appeal is heard—well, let's start. The sooner you make a motion, the sooner it's acted on, and the sooner the appeal gets here, that may well occur at least at the beginning of the sentence. So I'm a little surprised your motion isn't already here. It's a fair point, Judge Newman. I think the best estimation I can offer to the Court is that even with an expedited appeal, the order from Judge Presko requires Mr. Donziger to surrender himself to the MDC within 24 hours of this Court's ruling on the bail motion. And so we will file, as soon as we're done here, a motion to expedite the appeal. I think the point is we didn't think that was sufficient. Well, it may not be sufficient, but it's a pretty good fallback position, I would think. I'm not—no disagreement here, Your Honor. I just think that the reason why we're here today is because from our perspective, even an expedited appeal— All right. If it were expedited, how quickly can you get in your papers? I mean, I think we could probably have our papers in within a couple of weeks, 14 to 21 days. Not 10 days? If the Court wants us to have our papers in in 10 days, we can. No, it's not what we might want. I'm thinking of your client who might—depending on how we rule on the motion, but at least there's a risk that we might deny it. Indeed. In which case, I would assume he wants the appeal heard as soon as possible. And so if the Court is inclined to deny the motion, we certainly would ask to expedite the appeal as much as possible, and we would be happy to file within 10 days if that would assist the Court in doing so. But if I might just go back, Your Honors, I do think that there's no need for that kind of expedition, given the extent to which Mr. Donziger satisfies the conditions under Section 3143B. He raises substantial questions— But, Mr. Vladeck, can I ask you, do you understand the standard we're supposed to view the light risk finding as being clearly erroneous? Is there some dispute on that, or is that how we have to judge the district court's finding? So, Judge Lee, I do think there actually is some dispute about which features of the findings of the district court are subject to clear error review. I'm loathe to cite Judge Newman to his honor, but I think footnote 1 of the dissent in Mattis does make the point about how this is actually a little more complicated. From our perspective, Judge Lee, it's the distinction between findings of historical fact, which are verifiable and falsifiable, and legal conclusions. And in that context, the only conclusions—Your Honor, I see my time has expired. Go ahead. Thank you. Judge Lee, the only conclusions Judge Preska made in her October 1st decision, refusing to continue bail pending sentencing, was that Mr. Donziger has a greater incentive to flee now, and that the previous conditions are now insufficient. And that's even—she didn't even make that finding. That was implicit. We don't think it matters which standard the court applies because we think that even if that is a factual finding triggering clear error review, it was clearly erroneous. If the length of imprisonment matters, Mr. Donziger had far greater exposure at the beginning of the case when he faced felony charges than at sentencing. And that incentive was just as present after his conviction when the conditions continued for several months. So, Judge Lee, we think it's a close call on the standard review. We actually think there's a pretty good argument that there are no findings of historical fact in Judge Preska's judgment that warrant clear error review. We just don't think the court has to go there in this case because even if clear error is the right standard, we do think Judge Preska clearly erred. Thank you, counsel. Thank you, Your Honor. Ms. Glavin. May it please the court, my name is Rita Glavin, and I represent the United States for purposes of this appeal and also in the district court proceedings below. I want to start with respect to your point, Judge Newman, on a motion to expedite appeal. We will not oppose a motion to expedite the appeal should the court find that Judge Preska's determination was not clearly erroneous, which is the standard for bail decisions by the district court. We cite to it in our brief, United States v. Abu Hamra, 389 F. 3rd, 309, Second Circuit. With respect to Judge Preska's findings, what Judge Preska specifically cited to, and I refer the court to pages 62 to 66 of the transcript at sentencing, Judge Preska twice cited to what the standard is once sentence of detention or incarceration is imposed. The standard changes under the Bail Reform Act. She noted that. She would have to find by clear and convincing evidence that she did not believe that the defendant was likely to flee. What Judge Preska did was she cited back to all of her previous historical findings, which date back to she made findings in August of 2019. She made additional findings on November 25th of 2019. Can I just ask you, following up on what your adversary said regarding this characterizing this as a fact when it's not sort of, it is not, does not have the feel of a historical fact or something that is more, I don't want to say objective, but I mean, does the risk of flight when you're talking about risk, it doesn't have the same quality of sort of a factual finding that would be less controversial as to whether or not it's a factual finding, I guess. I'm not sure. Let me take it to a stab. I think I understand the question. The district court and the magistrate judges every single day make findings about risk of flight. And they are traditionally and almost always reviewed by this court as clearly erroneous and committed to the sound discretion of the district court. Her findings of fact were she looked at the defendant's individual circumstances, his extraordinary ties to Ecuador, to community leaders and to political leaders there, the frequent travel there, the lack of extradition process. The defendant's undisputed historical violation of court orders, which I might add, Your Honors, there's the historical violation of court orders. But as we sit here today, Mr. Donziger remains in violation of court orders and not just the court order that we've heard a lot about, which is surrendering his computer for imaging. He still hasn't complied with court orders that required him to turn over documents by date certain in June of twenty eighteen and then August of twenty eighteen. And the question is, why hasn't he turned those over? But what Judge Prescott made findings about is he hasn't complied with court orders. The strength of the evidence is strong. The ties to Ecuador, the frequent travel to Ecuador, and also just Mr. Donziger's historical sort of he decides what the law is. There's a difference between, you know, not complying with the discovery order and becoming an international fugitive. There is, Your Honor, but doesn't it beg the question, why is he not turning the documents over? Why the refusal to surrender the computer for imaging? He has already lost his appeal before the Second Circuit on March twenty ninth of twenty twenty one. The Second Circuit affirmed all of Judge Kaplan's civil contempt findings, save one, which was that you can't fundraise by selling other people's interests. And what the Second Circuit said is now, you know, you can't do that anymore. What has changed here between when Mr. Donziger first appeared in August of twenty nineteen and where we are now is that Mr. Donziger has now been disbarred. This has gone up to the Interstate Court of Appeals. He can't practice law anymore. The appeal that he was saying would exonerate him before the Second Circuit didn't exonerate him before the Second Circuit. He still has a pending civil case that is in front of Judge Kaplan, which at some point he's eventually going back there with not having complied with court orders. He has now gone through a trial where the evidence was virtually undisputed that he was not complying with court orders. So with respect to Mr. Donziger, and when you say he's not complying with discovery orders, it was bigger than that. He was not complying with orders that required him to turn over his interest in the Ecuadorian judgment that was worth hundreds of millions of dollars. And in fact, in the interim between when Judge Kaplan issued his RICO judgment and when the post-judgment discovery began, he entered into another agreement, undisclosed agreement, in twenty seventeen to make sure he could get the hundreds of millions of dollars. The one thing I will say about this case is we talk about six months imprisonment. Would he become an international fugitive? All I can tell you is in my experience, having been, you know, a criminal prosecutor and criminal defense lawyer, I've never seen a defendant quite like Mr. Donziger. Ms. Glavitt, if we were to expedite and give the appellant ten days, can you, can the government furnish its brief within ten days of the service of the appellant? You bet. Pardon me? You bet. Okay. Thank you. Thank you, counsel. Thank you. We'll take the matter under advisement.